# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted March 20, 2020        Decided June 26, 2020

No. 19-3026

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID LIEU,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00050-1)

*Jonathan Zucker*, appointed by the court, was on the briefs for appellant.

*Daniel Richardson*, Attorney, U.S. Department of Justice, *Jessie K. Liu*, U.S. Attorney at the time the brief was filed, and *Elizabeth Trosman* and *Jodi S. Lazarus*, Assistant U.S. Attorneys, were on the brief for appellee.

Before: ROGERS, GRIFFITH, and KATSAS, *Circuit Judges*.

Opinion of the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: David Lieu was convicted of distributing child pornography and traveling across state lines

to engage in sexual conduct with a nine-year-old girl. We consider whether the latter conviction must be set aside because the girl whom Lieu intended to molest was in fact an FBI fabrication. We also consider whether the district court permissibly admitted evidence that Lieu had molested his own stepdaughter several years earlier, when she was between six and eight years old.

I

The facts of this case are disturbing. On February 3, 2016, Lieu came across an Internet solicitation that read: "Any other young perv dads into no limit taboo stuff, shoot me an email … don't want to say to[o] much on here." S.A. 101. Lieu replied that he was "totally a taboo/pervy dad" and "into that." S.A. 103. Lieu and the poster, who called himself "John," continued an online conversation about their sexual interest in young girls. John described having oral sex with his nine-year-old daughter and sent Lieu a picture of her. Lieu responded that John was a "lucky dog," S.A. 112, and that the girl looked "delicious," S.A. 124. Lieu also described how his stepdaughter had "played some" with his erect penis, and the "anticipation of what she would do next was enough to make my heart jump out of my chest." S.A. 146. But he said that things "never went much farther," *id.*, and the "play" stopped about four years ago, when his stepdaughter was about ten years old, S.A. 112–13. Lieu sent John nine pictures of naked girls. One was of his stepdaughter at age seven, "getting out of the shower dripping wet." S.A. 283. Three were of girls between the ages of six and twelve, with their genitalia exposed. Lieu and John agreed to meet the next day in Washington, D.C., to perform various sex acts on John's daughter. On February 4, 2016, Lieu traveled from Maryland, where he was on a business trip, to D.C. as planned.

In fact, "John" was Detective Timothy Palchak, an investigator with the FBI's Child Exploitation Task Force. Palchak had created the solicitation and engaged Lieu as part an undercover effort to combat child sex abuse. Palchak had no nine-year-old daughter, and the images that he sent to Lieu were not pictures of actual children. When Lieu arrived in D.C. and introduced himself to Palchak, he was promptly arrested.

During the ensuing investigation, the government recovered Lieu's home computer and cellphone. The computer contained hundreds of images of child pornography, and Lieu's browsing history revealed thousands more. The cellphone contained Lieu's exchange with Palchak, as well as another explicit conversation between Lieu and a third party. In that exchange, Lieu recounted that he "had some experience" with his stepdaughter: "I can still remember my pounding heart. Wish it could have gone further than it did." S.A. 200. On the morning of February 4, Lieu also reported that he was "supposed to be getting together" with an eight-year-old "tonight." S.A. 201–02. Lieu's stepdaughter, whom we will call "E.," told investigators that Lieu had her touch his unclothed, erect penis on three occasions when she was between six and eight years old. She further revealed that, when she was ten or eleven years old, Lieu entered the bathroom when she was naked and about to take a shower, put his hands on her hips from behind, and told her that she was beautiful.

Lieu was charged with one count of distributing child pornography, *see* 18 U.S.C. § 2252(a)(2), and one count of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, *see id.* § 2423(b). Lieu moved to dismiss the travel count. He argued that section 2423(b) did not apply because his intended victim—Palchak's purported nine-year-old daughter—does not exist. The district

court rejected that argument. It noted that Lieu had "traveled across state lines for the purpose of engaging in illicit sexual conduct with a real person," despite not knowing that the intended victim was fictitious. *United States v. Lieu*, No. 17-0050, 2018 WL 5045335, at *4 (D.D.C. Oct. 17, 2018).

Before trial, the government sought a ruling that E. could testify about Lieu's abuse. The district court held the testimony admissible for two purposes. First, under Federal Rule of Evidence 404(b), it was admissible to prove Lieu's knowledge and intent with respect to both offenses. *United States v. Lieu*, 298 F. Supp. 3d 32, 55 (D.D.C. 2018). Second, under Rule 414(a), it was admissible on the distribution count for any purpose, including to prove that Lieu had a propensity to distribute child pornography. *Id.* at 58–59. Applying Rule 403, the court further held that the probative value of E.'s testimony was not substantially outweighed by any danger of unfair prejudice or confusion. *Id.* at 55–57, 59–60.

In the government's case-in-chief, Detective Palchak testified about his exchanges with Lieu. Among other things, Palchak read a transcript of Lieu's statements describing his past abuse of E. Other officers described the child pornography recovered from Lieu's computer and the exchanges recovered from his cellphone, including Lieu's exchanges with Palchak and the third party. The government introduced select images of child pornography from Lieu's computer. Finally, E., then sixteen years old, recounted Lieu's past abuse.

Lieu testified in his own defense. He claimed that he was only pretending to have a sexual interest in children, in order to determine whether Palchak had such an interest. According to Lieu, if Palchak turned out to be a child predator, Lieu would have reported him to the police, and if not, Lieu would have tried to recruit Palchak to work for his insurance company. As

part of the ruse, Lieu claimed to have made up his sexual attraction to E., who he says instigated the touching incidents over his objection.  Lieu admitted sending Palchak various images of naked girls, again as part of his ruse.  But he disclaimed any knowledge of the three sexually explicit images sent to Palchak, which he said must have reflected a computer error.  And he claimed that the pornographic images on his home computer had been downloaded by mistake, as he was experimenting with ways to compile large amounts of information at once.

The jury convicted Lieu on both counts.  The district court sentenced him to 286 months of imprisonment, followed by ten years of supervised release.

II

Lieu first argues that he committed no travel offense because his intended victim—Palchak's purported nine-year-old daughter—does not exist.  Lieu contends that the district court thus erred in denying his motion to dismiss the travel count.  We review this statutory question de novo.  *See United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014).

At the time of Lieu's offense, section 2423(b) provided that "[a] person who travels in interstate commerce ... for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both."[1]  Illicit sexual conduct includes any sexual act with a minor that would violate certain other statutes, *id.* § 2423(f)(1), one of which prohibits adults from knowingly

---

[1] Congress later amended section 2423(b) by removing "for the purpose" and substituting "with a motivating purpose."  *See* Pub. L. No. 115-392, § 14, 132 Stat. 5250, 5256 (Dec. 21, 2018).  The amendment was not retroactive and thus does not apply here.

engaging in any sexual act with another person under the age of 12, *id.* § 2241(c) & (d).  Thus, if Palchak had a nine-year-old daughter, Lieu could be convicted for traveling with an intent to engage in sexual conduct with her.

Lieu contends that he could not be convicted because Palchak's purported daughter was not an actual person.  Lieu stresses that section 2423(b) requires an intent to engage in sexual conduct with "another person."  He reasons that this "person" must be an actual human being, especially because section 2423(b) also uses the word "person" to denote the perpetrator, who likewise must be an actual human.

Lieu is correct that section 2423(b) uses "person" to mean an actual person, but that premise does not help him.  Section 2423(b) requires that the defendant travel in interstate commerce with a particular state of mind—"for the *purpose* of engaging in any illicit sexual conduct with another person" (emphasis added).  Lieu easily satisfied this state-of-mind requirement:  When he traveled from Maryland to D.C. on February 4, 2016, he did intend to engage in illicit sexual conduct with an actual child, rather than with a computer-generated image or with a figment of Palchak's imagination.  And because Lieu *intended* to have sexual contact with an actual child, he violated the statute even if he was mistaken about the physical attributes—or even the existence—of the child.  In short, the statute requires an actual person, but only in the mind of the defendant.

Lieu also notes that an immediately adjacent statute makes it unlawful for any "person" to transport an "individual" in interstate commerce with an intent that the "individual" engage in prostitution.  18 U.S.C. § 2423(a).  Lieu reasons that related statutes should be construed harmoniously; and because section 2423(a) requires an actual victim, section 2423(b) must

as well.  But the provisions work differently.  Section 2423(a) requires a live victim because the defendant, to commit the prohibited act, must transport another "individual" in interstate commerce.  Section 2423(b) does not require a live victim because the defendant need only himself travel in interstate commerce, and because the "person" to be victimized must exist only in the defendant's mind at the time of the travel.

Our analysis tracks the settled principle that impossibility is not a defense to an inchoate crime, so long as the defendant had the requisite state of mind to commit the underlying offense.  *See*, *e.g.*, *United States v. Williams*, 553 U.S. 285, 300 (2008); W. LaFave, 2 *Substantive Criminal Law* § 11.5(a)(2) (3d ed. 2017).  For example, a defendant may be convicted of attempting to sell cocaine even if he was really peddling sugar.  *See* W. LaFave, *supra*.  Likewise, a defendant may be convicted of pandering or soliciting child pornography even if the disputed images do not depict an actual child.  *See Williams*, 553 U.S. at 300.  In such cases, "impossibility of completing the crime because the facts were not as the defendant believed is not a defense."  *Id.*  Rather, the defendant's state of mind should be assessed "according to the circumstances as he believes them to be, rather than the circumstances as they may have existed in fact."  *Id.* (quoting Model Penal Code § 5.01, cmt. 3, at 307 (1985)).  This case does not involve a typical inchoate crime, but the same principle applies to construing the state-of-mind element of the governing statute.

Our analysis also tracks the views of our sister circuits.  Three courts of appeals have held that section 2423(b) applies to a defendant who travels across state lines intending to engage in sexual conduct with a child who, as things turn out, does not exist.  *See United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) ("It makes no difference that an actual minor

was not involved.") (cleaned up)); *United States v. Sims*, 428 F.3d 945, 959 (10th Cir. 2005) (rejecting defendant's argument that "because Kate does not exist, he could not be convicted"); *United States v. Root*, 296 F.3d 1222, 1231 (11th Cir. 2002) ("Root's conviction turns simply on the illegal purpose for which Root traveled."). Likewise, five courts of appeals have held that a defendant may be convicted of violating 18 U.S.C. § 2422(b), which prohibits attempting to persuade a minor to engage in illicit sexual activity, even if no actual minor was involved. *See Tykarsky*, 446 F.3d at 465–69; *Sims*, 428 F.3d at 959–60; *United States v. Meek*, 366 F.3d 705, 717–20 (9th Cir. 2004); *Root*, 296 F.3d at 1227–31; *United States v. Farner*, 251 F.3d 510, 512–13 (5th Cir. 2001). Lieu cites no contrary authority, and we have not found any.

We hold that a defendant violates section 2423(b) by traveling in interstate commerce with the intent to engage in illicit sexual conduct with a child, even if the defendant is mistaken in believing that an actual child is involved. The district court thus properly denied Lieu's motion to dismiss the charged travel offense.

## III

Lieu further contends that the district court abused its discretion in admitting E.'s testimony. This claim involves the interplay among three Federal Rules of Evidence. Rule 404(b) provides that evidence of uncharged acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 414(a) provides that in a criminal case where the defendant is accused of "child molestation," the district court

"may admit evidence that the defendant committed any other child molestation," and this evidence "may be considered on any matter to which it is relevant." Rule 403 provides that the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice" or "confusing the issues."

The district court addressed each of these rules. Under Rule 404(b), it held that E.'s testimony was admissible on "issues of knowledge, intent, motive, and absence of mistake," to show that Lieu knowingly distributed child pornography and traveled with an intent to engage in sexual conduct with a minor. *See Lieu*, 298 F. Supp. 3d at 55. Under Rule 414(a), the court further held that because the distribution offense involved a crime of child molestation, Lieu's prior abuse of E., which likewise involved child molestation, was also admissible to show that Lieu had a propensity to distribute child pornography. *See id.* at 57–59.[2] On appeal, Lieu contests neither ruling. Yet he contends that the court abused its discretion in concluding under Rule 403 that E.'s testimony was not substantially more prejudicial than probative.

At the outset, we note two obvious difficulties with Lieu's position. First, Rule 403 establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be "substantially" outweighed by considerations such as "unfair" prejudice. *See United States v. Cassell*, 292

---

[2] Rule 414 defines "child molestation" to include any crime "involving" specified kinds of contact between the defendant and the child or "any conduct prohibited by 18 U.S.C. chapter 110." Fed. R. Evid. 414(d)(2). The offense of distributing child pornography, 18 U.S.C. § 2252(a)(2), is codified in chapter 110. The travel offense in this case, 18 U.S.C. § 2423(b), is codified in chapter 117, and the government does not contend that it otherwise qualifies as a crime of child molestation under Rule 414.

F.3d 788, 796 (D.C. Cir. 2002).  Second, our standard of review is highly deferential:  Because "the district court is in the best position to conduct the balancing test," *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004), we review a decision to admit evidence under Rule 403 "with great deference, reversing only for grave abuse of discretion," *United States v. Vega*, 826 F.3d 514, 543 (D.C. Cir. 2016) (quotation marks omitted).  We find no grave abuse here.

The district court reasonably concluded that E.'s testimony had "significant" probative value.  298 F. Supp. 3d at 55.  As the court explained, the testimony showed that Lieu had a "specific sexual interest in female children of approximately [the same] age" as both Palchak's purported daughter and the girls in the pornographic images that Lieu sent to Palchak.  *Id.*  This tended to show both that Lieu knowingly distributed child pornography and that he traveled with the intent to engage in sexual conduct with a minor.  Moreover, this case turned entirely on Lieu's state of mind.  It was clear that Lieu's cellphone sent images of child pornography to Palchak, but Lieu disclaimed knowledge and stated that "mistakes could be made even by computers."  S.A. 373.  Likewise, it was clear that Lieu traveled across state lines to meet Palchak, after agreeing to engage in sexual conduct with his ostensible nine-year-old.  But Lieu disclaimed any bad intent, offering the alternative explanation that he was seeking either to ferret out possible wrongdoing or to recruit Palchak to sell insurance.  Indeed, Lieu even tendered an innocent explanation for his extensive collection of child pornography—that another computer error caused it to be downloaded.  The prosecution thus turned squarely on Lieu's state of mind, and E.'s testimony was directly relevant to it.

The district court also reasonably concluded that any unfair prejudice to Lieu would be "minimal."  298 F. Supp. 3d

at 55.  As the court explained, the abuse of E. was certainly "abhorrent," but her testimony would neither "dominate the trial" nor be "especially graphic in the context of the crimes" for which Lieu had been charged.  *Id.* at 55–56.  Indeed, the touching described by E. pales in comparison to the sex acts that Lieu planned to engage in with John's daughter— including everything up to but not including intercourse. Likewise, E.'s account pales in comparison to the accounts that Lieu himself provided to Palchak and the third party, which included graphic descriptions of how much Lieu enjoyed the encounters and wished they had gone further.  A jury that heard the latter would not likely be inflamed unfairly by the former. *See*, *e.g.*, *United States v. Long*, 328 F.3d 655, 668 (D.C. Cir. 2003); *United States v. Anderson*, 851 F.2d 384, 393–94 (D.C. Cir. 1988).  Finally, the district court gave appropriate limiting instructions explaining the permissible and impermissible uses of E.'s testimony.

Lieu's responses are unpersuasive.  First, Lieu claims that his abuse of E. was too dissimilar from the charged conduct to have much probative value.  But "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense" and "are probative of intent."  *Long*, 328 F.3d at 661 (quotation marks omitted).  Here, the district court reasonably concluded that Lieu's molesting his own stepdaughter, when she was between ages six and eight, bore substantially on whether he traveled to D.C. with an intent to molest a nine-year-old.  *See United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children.").  Likewise, the district court reasonably concluded that testimony confirming Lieu's sexual interest in young girls

bore on whether Lieu knowingly distributed pornographic images of young girls. On the distribution count, Lieu objects that he never contested knowledge about "the sexually explicit nature of the material" or "the age of the performers," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). But Lieu did disclaim knowledge of how his cellphone transmitted the three pornographic images to Palchak, even while admitting to having transmitted tamer images of naked young girls. Lieu's demonstrated sexual interest in children bears on this disputed knowledge issue.

Next, Lieu contends that the abuse of E., which occurred six to eight years before Lieu's encounter with Palchak, happened too long ago to be very probative. But in the context of sex offenses, courts have admitted evidence of much older conduct to show that the defendant acted with the requisite intent. *See*, *e.g.*, *United States v. Underwood*, 859 F.3d 386, 393 (6th Cir. 2017) (acts from 24 years before trial); *United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001) (11 years); *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) (20 years). Moreover, Lieu himself confirmed the significance of his encounters with E. by raising them in salacious discussions with Palchak and the third party. *See* 298 F. Supp. 3d at 55. Lieu further suggests that the district court misapprehended the relevant timeframes in stating that E.'s abuse had occurred "within approximately four years" of the charged conduct. *See id.* To the contrary, the court correctly understood the chronology, and its reference to "four years" denoted the last act of arguable abuse, involving the shower incident that occurred when E. was about ten years old, rather than the touching that occurred when she was between six and eight. *See id.* at 42–43.

On the prejudice side of the balance, Lieu contends that the district court overlooked a risk that the jury would draw a

forbidden propensity inference as to the travel offense. But that possibility is present whenever a court admits evidence for a limited purpose. *See*, *e.g.*, *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc). Moreover, the risk of an impermissible inference was not unusually high in this case. There were only two charged offenses in a factually simple case turning on whether Lieu knowingly distributed child pornography on February 3 and traveled on February 4 with the intent to engage in sexual activity with a minor. Finally, the district court minimized the risk of an improper propensity inference through jury instructions carefully setting forth the permissible and impermissible uses of E.'s testimony. Such limiting instructions "ordinarily suffice to protect the defendant's interests" regarding uncharged acts admitted for limited purposes. *See Long*, 328 F.3d at 662. Lieu complains that the district court gave the instructions at the end of his trial, rather than when E.'s testimony was introduced. But Lieu did not ask for limiting instructions at that time, so he forfeited any objection to their timing. *See United States v. Brawner*, 32 F.3d 602, 605 (D.C. Cir. 1994). And Lieu has not attempted to show that the district court committed plain error by giving the instructions only at the end of trial. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1993). In any event, as Lieu himself acknowledges, this Court has never held that a limiting instruction must be given more than once. *See United States v. Winstead*, 890 F.3d 1082, 1085 (D.C. Cir. 2018).

For these reasons, we hold that the district court did not abuse its discretion in admitting E.'s testimony.

*Affirmed.*