# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued March 19, 2025          Decided May 30, 2025

No. 23-5204

RYAN CASTANEIRA,
APPELLANT

v.

KRISTI NOEM, SECRETARY FOR THE DEPARTMENT OF
HOMELAND SECURITY, IN HER OFFICIAL CAPACITY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01485)

---

*Ryan Castaneira*, *pro se*, argued the cause and filed the briefs for appellant.

*Cameron Beach*, Student Counsel, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With her on the briefs were *J. Scott Ballenger*, *Lori Alvino McGill*, and *Catherine E. Stetson*, appointed by the court, and *Lauren Emmerich* and *Benjamin Leonard*, Student Counsel.

*Jordan K. Hummel*, Trial Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief

was *Brett A. Shumate*, Acting Assistant Attorney General, Civil Division.

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Under the Immigration and Nationality Act, any United States citizen may file a "Form I-130" petition with the United States Citizenship and Immigration Services ("USCIS") to request that the Attorney General recognize a foreign national family member, like a spouse or child, as an "immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1) (2025). If the petition is truthful, the Attorney General "shall . . . approve" it, and the family member may immigrate to the United States and obtain lawful permanent resident status. *Id.* § 1154(b). However, the Adam Walsh Act ("AWA" or "Act") excludes from this process citizens with certain prior sex offense convictions. The Act states that, with respect to any Form I-130 petitioner who has been convicted of a "specified offense against a minor," the Secretary of Homeland Security has "sole and unreviewable discretion" to determine whether "the citizen poses no risk to the alien with respect to whom a petition . . . is filed." *Id.* § 1154(a)(1)(A)(viii)(I). If it is determined that the petitioner poses "no risk," then the Form I-130 will be granted; otherwise, the petition will be denied. *Id.*

In 2019, Ryan Castaneira, the Appellant in this case, filed a Form I-130 petition for his spouse, a Mexican national. USCIS sent Appellant a Notice of Intent to Deny because he had been convicted of crimes in Georgia that appeared to qualify as "special offenses against a minor" under the Adam

Walsh Act. USCIS told Castaneira that, to succeed with his Form I-130 petition, he would need to prove "beyond any reasonable doubt" that he posed "no risk" to his wife. In his response to USCIS, Appellant claimed that the agency could not deny his petition on the grounds asserted because his prior convictions involved an undercover officer, not a minor, and thus could not have constituted an offense "against a minor" under the statute.

With USCIS's final decision still pending, Appellant filed a *pro se* complaint in the District Court, seeking injunctive and declaratory relief, challenging the agency's use of the beyond-any-reasonable-doubt standard for adjudicating his Form I-130 petition, and requesting a judgment declaring the Adam Walsh Act inapplicable to his convictions. After USCIS issued its final decision, Appellant filed an amended complaint with the District Court.

Appellant's amended complaint advanced the following principal contentions: (1) in applying a beyond-any-reasonable-doubt standard, USCIS failed to follow its own binding precedent; (2) his prior convictions do not qualify as "specified offense[s] against a minor" under the Adam Walsh Act; and (3) USCIS violated the Administrative Procedure Act ("APA") in arbitrarily and capriciously refusing to adhere to its own precedent. Appellant claimed that the agency's prior decision in *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010), is controlling, having imposed a "preponderance of the evidence" standard "[e]xcept where a different standard is specified by law." *Id.* at 375.

The District Court rejected Appellant's contentions. It held that the Act's definition of offenses against a minor covers the conduct underlying Appellant's prior convictions, because it "by its nature" constituted an "offense against a minor."

*Castaneira v. Mayorkas*, 682 F. Supp. 3d 19, 30 (D.D.C. 2023) (quoting 34 U.S.C. § 20911(7)(I)); *see also* 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Regarding the applicable evidentiary standard, the District Court ruled that it had no jurisdiction to review the counts involving that issue. Because the Act places the "no risk" determination within USCIS's "sole and unreviewable" discretion, the court concluded that the standard of proof USCIS applies in making that determination is beyond the reach of judicial review. *Castaneira*, 682 F. Supp. 3d at 25-26 (quoting 8 U.S.C. § 1154(a)(1)(A)(viii)(I)).

We affirm the District Court's ruling in part. Appellant's prior convictions are covered by the applicable statutory definition of "specified offense against a minor" and his I-130 petition thus fell within the Act's scope. But, while USCIS has unreviewable discretion in making the "no risk" determination, the agency does not dispute that it has the authority to cabin this grant of discretion by adopting an evidentiary standard less stringent than beyond a reasonable doubt to govern the processing of Form I-130 petitions. If USCIS chooses to tie its own hands through binding agency precedent, and then departs from the standard it has adopted, such departure would be reviewable under the APA.

Because neither the District Court nor the agency has addressed whether *Chawathe* or any other agency decision purports to establish a controlling standard for adjudicating Form I-130 petitions under the Adam Walsh Act, and whether that standard was in fact violated by USCIS in adopting the beyond-any-reasonable-doubt standard in the Notice it sent to Appellant, we vacate the District Court's jurisdictional ruling and remand the case for further proceedings.

## I.   BACKGROUND

### A.  The Adam Walsh Act

As outlined above, under the Immigration and Naturalization Act ("INA"), if a U.S. citizen wishes to obtain permanent residence for an immediate alien relative, he or she can file a Form I-130 petition with USCIS. 8 U.S.C. § 1154(a)(1)(A)(i); 6 U.S.C. § 271(b)(1) (transferring the adjudication of immigrant visa petitions to the Bureau of Citizenship and Immigration Services, later known as USCIS). The petitioner bears the burden of proving the beneficiary's eligibility. 8 U.S.C. § 1361.

In 2006, Congress enacted the Adam Walsh Act to, *inter alia*, "protect children from sexual exploitation" and "promote Internet safety" for children. Pub. L. No. 109-248, 120 Stat. 587, 587 (2006). The AWA, as relevant here, amended the INA to prevent any U.S. citizen from obtaining permanent resident status for an alien relative if the citizen petitioner "has been convicted of a specified offense against a minor." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The Act defines "specified offense against a minor" as "an offense against a minor that involves" a specific list of nine offense categories, including, *inter alia*, "[s]olicitation to engage in sexual conduct"; "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct"; and, as a catchall provision, "[a]ny conduct that by its nature is a sex offense against a minor." *Id.* § 1154(a)(1)(A)(viii)(II) (cross-referencing 34 U.S.C. § 20911(7)).

If the U.S. citizen petitioner is found to have been convicted of any of the enumerated categories of offenses, he is then foreclosed from petitioning for immigration benefits "unless the Secretary of Homeland Security, in the Secretary's sole and

unreviewable discretion, determines that the citizen poses no risk" to the alien beneficiary. *Id.* § 1154(a)(1)(A)(viii)(I). This no-risk determination has since been transferred to USCIS. *See* 6 U.S.C. § 271(b)(1); 8 C.F.R. § 2.1 (2024).

In leaving for the agency to determine whether the petitioner poses "no risk" to the alien beneficiary, the AWA does not specify how that determination is to be made, including the applicable evidentiary standard pursuant to which the petitioner must demonstrate that he poses no such risk. In 2007, the agency instructed field officers in an internal interoffice memorandum that, to "avoid denial" of an I-130 petition under the statute, the petitioner must "submit evidence of rehabilitation . . . that clearly demonstrates, *beyond any reasonable doubt*, that he or she poses no risk to the safety and well-being" of the beneficiary, including any "alien derivate beneficiary" – *i.e.*, alien children of the spouse in an I-130 petition. Michael Aytes, Interoffice Memorandum at 5 (Feb. 8, 2007), Joint Appendix ("J.A.") 43 (emphasis added).

However, a different standard of proof has been adopted by USCIS in a precedential and arguably binding decision. Under Department of Homeland Security regulations, when the Attorney General so approves, the Secretary of Homeland Security – and, by extension, USCIS – "may file with the Attorney General decisions relating to the administration of the immigration laws of the United States for publication as precedent in future proceedings." 8 C.F.R. § 1003.1(i) (2024). In *Matter of Chawathe*, the agency held that "[e]xcept where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." 25 I. & N. Dec. 369, 375 (AAO 2010) (citing to a string of administrative decisions applying the same standard in a variety of immigration contexts). In 2010, the

Department of Homeland Security made this decision precedential with the goal of "guiding USCIS officers in their administration of the immigration laws." *Chawathe*, 25 I. & N. Dec. at 369 n.1. Notably, *Chawathe*, which was originally decided in 2006, pertained to an unrelated provision of the INA regarding the definition of publicly held corporations. But in designating *Chawathe* as precedent, USCIS stated that its evidentiary standard should control "[i]n most administrative immigration proceedings." *Id.* at 369.

### B.   *Facts and Procedural History*

Appellant Ryan Castaneira is a U.S. citizen seeking permanent residence for his spouse, a Mexican national. He originally filed a Form I-130 petition in August 2019. In March 2022, USCIS sent Appellant a Notice of Intent to Deny ("Notice") his petition, offering him "the opportunity to submit documentary evidence to overcome the grounds for the intended denial" of his petition. USCIS, Notice of Intent to Deny at 1 (March 8, 2022), J.A. 31.

In this Notice, USCIS explained that its records indicated that Appellant was previously convicted of offenses covered by the Adam Walsh Act: he had previously been convicted of criminal attempt to commit child molestation, criminal attempt to entice a child for indecent purposes, computer pornography and child exploitation, and obscene Internet contact. *See id.* 31-32; *Castaneira v. State*, 740 S.E.2d 400, 408 (Ga. App. Ct. 2013); Georgia Computer or Electronic Pornography and Child Exploitation Prevention Act, O.C.G.A. § 16-12-100.2(d)(1), (e)(1) (West 2024). In 2009, Appellant was convicted in Georgia state court of criminal attempt to commit these offenses when he engaged in online conversation on an adult-only website with an individual whom he believed to be 15 years old, but who was in fact an adult undercover police

officer. *Castaneira*, 740 S.E.2d at 402-03; *see also* O.C.G.A. § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."). For this conduct, Appellant was sentenced to 10 years of confinement and probation, and was required to register as a sex offender.

Given these past offenses, USCIS informed Appellant that he could still qualify for an I-130 benefit if he demonstrated by a preponderance of the evidence that he had not been convicted of a "specified offense against a minor" under the AWA. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). And, were the AWA to apply, USCIS told Appellant that he must "prove beyond any reasonable doubt" that he "pose[d] no risk of harm to the beneficiary" of his petition – his spouse, who at the time of this Notice was 35 years old. Notice of Intent to Deny at 4, J.A. 34 (quoting *id.*). To overcome this burden, Appellant could provide evidence of having completed rehabilitation programs, certified evaluations by qualified doctors, evidence of community service, etc.

Before submitting any of the evidence listed above, Appellant filed a *pro se* suit in federal district court, contesting the beyond-any-reasonable-doubt evidentiary standard as arbitrary, capricious and otherwise contrary to law, 5 U.S.C. § 706(2)(A), and seeking a judgment declaring that the AWA did not apply to his prior convictions because no actual minor was involved. A few days later, Appellant then submitted additional evidence in response to the Notice of Intent to Deny. USCIS then moved to dismiss the suit in federal court and, in November 2022, formally denied Appellant's I-130 petition. In denying the petition, USCIS explained that the evidence proffered, including letters by physicians, failed to clear the beyond-any-reasonable-doubt bar because they indicated that

Appellant still had "recidivist risk factors" that had to be "monitor[ed]" so as to avoid "lead[ing] back into his offense cycle." Form I-130 Denial Decision at 4-5 (Nov. 10, 2022), J.A. 70-71.

After the denial was issued, Appellant then amended his complaint to challenge the final denial on the ground that the beyond-any-reasonable-doubt standard was arbitrary and capricious because it contradicts binding agency precedent set out in *Chawathe*, and because USCIS did not articulate why the *Chawathe* standard did not apply here. Additionally, Appellant reiterated that his prior Georgia state convictions did not fall within the AWA, 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

The District Court rejected both arguments. *Castaneira*, 682 F. Supp. 3d at 21. The court concluded that Appellant's prior state convictions fell within the statutory definition of "specified offense against a minor," 34 U.S.C. § 20911(7), and granted the Government's motion to dismiss for failure to state a claim as to count III of the complaint. *Id.* at 29-31. The court also dismissed the remaining counts – I, II, IV and V – for lack of jurisdiction, finding that the appropriate evidentiary standard USCIS adopted for its "no risk" determination was not judicially reviewable under 8 U.S.C. § 1154(a)(1)(A)(viii)(I) and 8 U.S.C. § 1252(a)(2)(B)(ii), which bars judicial review over "decision[s]" that are "specified . . . to be in the discretion" of the Secretary of Homeland Security. *Id.* at 25-28. Because the statute's grant of discretion shields the "no risk" determination from review, the court explained, the applicable evidentiary standard underlying the ultimate determination is also within USCIS's discretion and therefore unreviewable. Moreover, such broad grant of statutory discretion meant that Appellant could not challenge the standard of proof even if that standard had violated binding agency precedent.

Appellant then filed this *pro se* appeal challenging the District Court's dismissal of his complaint for failure to state a claim as to count III, and for lack of jurisdiction as to counts I, II, IV and V. This court appointed an *amicus curiae* to present arguments on behalf of Appellant.[1]

## II.  ANALYSIS

### A.  Standard of Review

We review dismissals for failure to state a claim and for lack of jurisdiction *de novo*. *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 441 (D.C. Cir. 2020).

### B.  Appellant's Prior Convictions Fall Within the Scope of the Adam Walsh Act

The AWA applies only to petitioners who were convicted of "specified offense[s] against a minor." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). In defining such offenses, the Act cross-references another statute, the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20911. *See* 8 U.S.C. § 1154(a)(1)(A)(viii)(II). SORNA, in turn, provides that the term "specified offense against a minor" is defined as "an offense against a minor that involves any of the following":

> (A)  An offense (unless committed by a parent or guardian) involving kidnapping.

---

[1] The court expresses its gratitude to Cameron Beach, who presented oral argument on behalf of Appellant, and to her colleagues at the University of Virginia School of Law Appellate Litigation Clinic, who appeared with her on the briefs, for their excellent service to the court.

(B)   An offense (unless committed by a parent or guardian) involving false imprisonment.

(C)   Solicitation to engage in sexual conduct.

(D)   Use in a sexual performance.

(E)   Solicitation to practice prostitution.

(F)   Video voyeurism as described in section 1801 of title 18.

(G)   Possession, production, or distribution of child pornography.

(H)   Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I)   Any conduct that by its nature is a sex offense against a minor.

34 U.S.C. § 20911(7).

The Government relies on subsection (I), arguing that Appellant's conduct underlying his state convictions "by its nature" constituted a sex offense against a minor. Appellant contends that this subsection does not encompass his prior convictions, because they were premised on criminal attempt, rather than the actual committing of the offenses charged. Because these state offenses do not require as an element the involvement of an actual minor, Appellant argues, they cannot trigger the AWA. We disagree.

We begin with the text of § 20911(7)(I), *see Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017), which references "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7). First, Congress's choice to employ the phrase "any conduct" indicates its intent to sweep broadly. "The Supreme Court has 'repeatedly explained' that 'the word "any" has an expansive meaning.'" *Lissack v. Comm'r of Internal Revenue*, 125 F.4th 245, 254

(D.C. Cir. 2025) (quoting *Patel v. Garland*, 596 U.S. 328, 338 (2022)). Other circuits to consider this provision have similarly concluded that Congress "purposely defined its terms broadly to 'cast a wide net to ensnare as many offenses against children as possible.'" *United States v. Hill*, 820 F.3d 1003, 1005-06 (8th Cir. 2016) (quoting *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010)).

Second, as other circuits have also observed, § 20911(7)(I) is a "catchall," residual clause, and thus must be broad enough to include all of the preceding subsections. *See United States v. Mi Kyung Byun*, 539 F.3d 982, 988 (9th Cir. 2008); *Dodge*, 597 F.3d at 1356. Directly preceding subsection (I) lies subsection (H), which expressly defines as a "specified offense against a minor" "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate *or attempt* such conduct." 34 U.S.C. § 20911(7)(H) (emphasis added). Although the Government does not rely on that subsection, it necessarily informs the meaning of subsection (I): Generally, when Congress "defines a broad, final category" preceded by an enumerated list of categories, that "catchall clause[]" is "to be read as bringing within a statute categories similar in type to those specifically enumerated." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (cleaned up).

An attempt to engage in conduct involving a minor, which is included in subsection (H), does not require an actual minor victim, as our courts have long held that a mistaken belief by the defendant is not a defense to criminal attempt. *See United States v. Lieu*, 963 F.3d 122, 126-27 (D.C. Cir. 2020). Because subsection (I) naturally subsumes the attempted crimes outlined in subsection (H), Appellant's convictions for criminal attempt under the Georgia statute fall within the scope of the AWA. Moreover, this interpretation is consistent with SORNA's definition of "sex offense," which expressly

includes attempts. 34 U.S.C. § 20911(5)(A)(v); *see also id.* § 20911(8) (defining "convicted" with respect to such offenses to include juveniles convicted of "attempt or conspiracy"). Appellant's contention that the AWA's definition of "sex offense against a minor" requires an "actual minor" would thus contradict the text's broad definition of predicate offenses. It would also run afoul of the statutory purpose, which under § 20911(7) sought to "[e]xpan[d]" the "definition of 'specified offense against a minor' to include all offenses by child predators."

Finally, we need not opine on whether the District Court erred in applying a "circumstance-specific" approach in interpreting § 20911(7). *See Castaneira*, 682 F. Supp. 3d at 29-30. Appellant contends that the District Court should have looked categorically to Appellant's prior offenses. Under this categorical approach urged by Appellant, a state conviction would be a "sex offense against a minor" under the AWA "only if the least of the acts criminalized by the state statute falls within the generic federal definition of" sex offense against a minor. *Esquivel-Quintana*, 581 U.S. at 389-90. The District Court rejected this argument: as § 20911(7) expressly references "conduct," rather than specific elements of an offense, the court looked to the specific circumstances of Appellant's prior convictions in determining whether his conduct fell within the statute. *Castaneira*, 682 F. Supp. 3d at 30; *see also Nijhawan v. Holder*, 557 U.S. 29, 38-39 (2009).

But applying either approach here would yield the same result, because the central inquiry would remain what constitutes an "offense against a minor" under § 20911(7)(I). It is undisputed that Appellant's state convictions of criminal attempt did not require a minor victim as an element, and that in the specific conduct underlying his conviction, he did not engage with an actual minor victim. Thus, if the AWA requires

the actual involvement of a minor – either as an element of the predicate offense, or in the specific circumstances underlying the conviction – then Appellant's prior convictions do not fall within the statute. Because we conclude that the statute does not, we need not determine which interpretative approach applies in this case. Appellant's argument fails under both. *See United States v. Caso*, 723 F.3d 215, 221 (D.C. Cir. 2013); *United States v. Schofield*, 802 F.3d 722, 729 (5th Cir. 2015) ("[W]e need not decide which approach applies here because Schofield's offense is a sex offense under both the non-categorical and categorical approaches.").

Because Appellant was previously convicted of attempted offenses which, by their nature, constituted sex offenses against a minor, we thus affirm the District Court's dismissal of his claim that the AWA does not encompass his past state convictions.

### C. The District Court Erred in Declining to Review Appellant's Procedural Challenge to the Standard of Proof

Having correctly determined that Appellant's conduct fell within the scope of the AWA, USCIS next turned to whether he could overcome the Act's bar to immigrant relative petitions. It concluded that he did not, having failed to demonstrate "beyond any reasonable doubt" that he posed no risk to the petition beneficiary. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Appellant contends that USCIS applied the wrong evidentiary standard, and that, under binding agency precedent, the correct standard is one of the preponderance of the evidence. *See Chawathe*, 25 I. & N. Dec. at 369.

The District Court dismissed this claim for want of jurisdiction, holding that questions involving the no-risk determination fall within the "sole and unreviewable discretion" of USCIS. *Castaneira*, 682 F. Supp. 3d at 26-27; *see also* 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Importantly, the court declined to ascertain whether the agency had indeed departed from *Chawathe* (or any other agency precedent) in applying the stringent beyond-any-reasonable-doubt standard of proof. In the view of the District Court, "even if USCIS disregarded its own binding precedent and thereby acted unlawfully, it does not follow that this Court has the power to afford Castaneira any sort of remedy—at least not where Congress has deprived the courts of such power by statute." *Castaneira*, 682 F. Supp. 3d at 27. The court thus found that Appellant's APA claims were not available where a statute imposes a reviewability bar. *Id.* We agree with Appellant that the District Court erred in its reasoning. If there is binding agency precedent applicable here, challenges to the agency's departure from its own precedent are judicially reviewable.

At the outset, we note that there is no dispute here that USCIS's ultimate no-risk determinations are beyond the reach of judicial review. In a separate statute, Congress has explicitly precluded judicial review of USCIS actions that are committed to agency discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Bouarfa v. Mayorkas*, 604 U.S. 6, 11 (2024). Indeed, Appellant does not contest that no-risk determinations under the Adam Walsh Act involve discretionary agency actions that are barred from judicial review. That is not the issue here.

Rather, Appellant reasonably argues that if the Secretary exercised her discretion to bind herself to a preponderance standard in no-risk determinations under this statute, the fact that she has the "sole and unreviewable" discretion to make that determination does not preclude judicial review of whether she

properly disregarded applicable agency precedent and spurned the preponderance standard when she denied his Form I-130 petition. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). In other words, the issue before us is whether 8 U.S.C. § 1154(a)(1)(A)(viii)(I), in granting USCIS "sole and unreviewable discretion" to "determine[] that the citizen poses no risk," also affords the agency discretion to depart from its own binding regulations or precedents in making this determination. We hold that it does not. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (finding jurisdiction over challenge to Board of Immigration Appeals' denial of application for cancelation of removal despite jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)).

We address this question guided by a "strong presumption" in favor of judicial review of administrative action, which can only be overcome by "clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotation marks and citation omitted); *see also Kucana v. Holder*, 558 U.S. 233, 251-52 (2010). The Supreme Court has moreover "consistently applied the presumption of reviewability to immigration statutes," such as 8 U.S.C. § 1252(a)(2)(B)(ii). *Guerrero-Lasprilla*, 589 U.S. at 229 (internal quotation marks and citation omitted).

The Government does not dispute that *Chawathe* constitutes binding agency precedent pursuant to the agency's own regulations. *See Chawathe*, 25 I. & N. Dec. 369; 8 C.F.R. § 1001.3(i). Appellant contends that because *Chawathe* supplies the applicable evidentiary standard, USCIS's divergence from that standard was arbitrary and capricious. The Government offers no intelligible answer. Rather, it merely asserts in one brief sentence that "*Chawathe* does not apply in the AWA context," Defendants-Appellees' Br. 21, but it does not offer any support for this statement. Instead, it

merely asserts that even if *Chawathe* applies, Appellant's challenge would not be reviewable. *Id.* at 21 & n.8. We disagree. *See Aburto-Rocha*, 535 F.3d at 502-03 (holding that actions by an agency may still be within the purview of judicial review even where they underlie determinations that are ultimately discretionary).

The Government's position goes too far. While Congress has granted USCIS unreviewable discretion to determine whether a citizen petitioner poses no risk to the Form I-130 beneficiary, USCIS has not provided "clear and convincing evidence of congressional intent to preclude judicial review" over its decision to exert this discretion in a manner that violates its own binding regulations and published precedents. *Guerrero-Lasprilla*, 589 U.S. at 229. As the Supreme Court has explained, Congress may shield from judicial review an agency's ultimate determination without precluding courts from reviewing the "practice[s] or procedure[s] employed in making" such individual determinations. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991).

While USCIS's final no-risk determinations are unreviewable, "general collateral challenges" to the agency's practices and policies still fall within judicial purview. *Id.*; *see also Grace v. Barr*, 965 F.3d 883, 893 (D.C. Cir. 2020) (finding jurisdiction over "facial challenges to the written policies that govern" individual determinations, as opposed to "direct review of individual aliens' . . . determinations"); *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (interpreting 8 U.S.C. § 1225(b)(1)(A)(iii)(I), committing an action to the Secretary of Homeland Security's "sole and unreviewable discretion," as barring only "individualized forms of discretionary relief," rather than "generally applicable rulemaking governing . . . *procedures* undertaken by the Secretary").

The Government attempts to distinguish *McNary* and circuit precedent by arguing that because the Act here utilizes the verb-form "determines," rather than the noun-form "determination" as in the statute in *McNary*, the grant of discretion here is broader and bars challenges to the procedural standards USCIS applies in reaching its final determination. *See Bakran v. Sec'y, U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 563 (3d Cir. 2018); *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 542-43 (11th Cir. 2019). We are not persuaded by such grammatical gymnastics. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("*Make* followed by a noun with the indefinite article is often nearly equivalent to the verb intransitive corresponding to that noun." (citation omitted)); *see also Bourdon*, 940 F.3d at 556 (Jordan, J., dissenting). Under *McNary*, the presumption of judicial reviewability thus applies with full force in cases involving facial challenges to standards USCIS applies in making its no-risk determination under the AWA, including evidentiary standards that allegedly contradict binding agency precedent. 498 U.S. at 492.

The Government observes that some circuits have interpreted the AWA's reviewability bar to preclude challenges to the applicable evidentiary standard. *See Bakran*, 894 F.3d at 563; *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 380-81 (6th Cir. 2017); *Bourdon*, 940 F.3d 537. However, only one circuit has squarely addressed the question before us here: whether the statute shields from judicial review challenges that the agency has violated its own binding precedent in applying the beyond-any-reasonable-doubt standard. *See Bremer v. Johnson*, 834 F.3d 925, 930-31 (8th Cir. 2016). Unlike in cases addressing whether the agency is free to set the standard of proof it chooses, *see Gebhardt*, 879 F.3d at 987, the underlying

question before us is whether the agency can arbitrarily depart from the standard it chooses to set.

The Eighth Circuit found that *Chawathe* did not apply in the AWA context, *Bremer*, 834 F.3d at 930-31, but the Government does not meaningfully make this argument before us here. Instead, the Government relies on *Bremer* to argue generally that because the AWA affords USCIS broad discretion, that statute itself supplies an alternate standard from *Chawathe*. This circular argument assumes that because Congress has authorized an agency to act with discretion, it can exercise this discretion without heeding its own regulations, procedures, and precedents. But the Government cites to no authority – and neither does the court in *Bremer* – to support this premise. Indeed, this is not how administrative law works. Instead, "[i]t is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990). This fundamental principle remains true even for "gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003).

Even where Congress has accorded an agency broad discretion, if the agency itself chooses to bind itself to published procedures, this choice means that it must then "exercise its own discretion" in accordance with its own "existing valid regulations" and binding precedents. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Thus, if *Chawathe* applies here, the agency has cabined its own discretion through its own precedent, and it must exercise its discretion in the manner it itself sets out. *See Steenholdt*, 314 F.3d at 639; *see also Aburto-Rocha*, 535 F.3d at 503 (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) did not bar judicial review where "the choice by the [agency] to disregard its own binding precedent—even when deciding an issue that

*is* within its discretion—is *not itself* a discretionary decision Congress has excluded from review").

As in *Aburto-Rocha*, where the agency's regulations "themselves indicate that adherence to precedent is a non-discretionary act," whether the agency has adhered to its own precedent is not a question barred by a statute that precludes judicial review over *discretionary* determinations. *Id.* (citing 8 C.F.R. § 1003.1(g)). Here, the agency is said to have imposed a specific standard of proof and made this standard non-discretionary through binding precedent. *See* 8 C.F.R. § 1003.1(i). This standard thus cannot be a discretionary action that falls within the judicial reviewability bar: if *Chawathe* applies, the standard of proof is not within the agency's discretion at all. *See also Tello v. Att'y Gen. of U.S.,* 544 F. App'x 55, 58 (3d Cir. 2013) (finding jurisdiction where petitioner challenged that "agency applied the incorrect legal standard, in violation of its own authority" despite 8 U.S.C. § 1252(a)(2)(B)).

It is possible that *Chawathe* does not apply in the AWA context and that, in making its preponderance-of-the-evidence standard precedential, the Department did not mean to disturb the beyond-any-reasonable doubt standard that may have already been in place for no-risk determinations under the AWA. But because the District Court did not address this possibility, and because the Government does not make this argument before us, we cannot conclude that the agency has *not* violated its own binding precedent. Nothing in the Act required the agency to adopt any particular standard. But if there was a standard in place, then the agency was required to follow it.

We therefore remand for the District Court to consider, in the first instance, whether USCIS has indeed adopted a

standard of proof that would bind it in this case, and whether it has violated its own standard. If the District Court finds that *Chawathe* is indeed binding here, then it must exercise its judicial review over Appellant's challenge to the standard of proof.

### III.    CONCLUSION

For the foregoing reasons, we affirm the District Court's decision in part, vacate its jurisdictional holding as to counts I, II, IV and V, and remand for further proceedings consistent with this opinion.

*So ordered.*